# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

RAMON LAWRENCE PARKER,

    Petitioner,

-vs-                                          Case No.  8:10-CV-1576-T-27TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Ramon Lawrence Parker ("Petitioner"), a state prisoner proceeding *pro se*, initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 ("petition") (Dkt. 1). Upon consideration of the petition, the Court ordered Respondent to show cause why the relief sought in the petition should not be granted (Dkt. 6). Respondent filed a response to the petition in compliance with this Court's instructions and with the Rules Governing Section 2254 Cases in the United States District Courts (Dkt. 10). Petitioner filed a reply to the response (Dkt. 15).

Petitioner raises two claims for relief in his petition. Petitioner alleges: (1) the trial court violated his rights under "the Confrontation and Due Process Clauses of the U.S. Constitution" by refusing to allow the defense to impeach the victims during cross-examination with prior false accusations of sexual abuse; and (2) counsel was ineffective in failing to adequately oppose the State's motion in limine to exclude evidence that two of the three victims had previously made false allegations of sexual molestation against Parker and/or other individuals (Dkt. 1 at docket pp. 5-14).

**I. Background and Procedural History**

Petitioner was charged by Supersedes Information with four counts of lewd and lascivious act on a child and three counts of sexual battery on a child less than twelve years old (Resp. Ex. 41, Vol. I at record pp. 20-26).[1] Petitioner proceeded to a jury trial. On August 8, 2000, Petitioner was found guilty of one count of sexual battery and three counts of lewd and lascivious act on a child (Id. at record pp. 58-59).[2] Petitioner was sentenced to fifteen-year prison terms on the three lewd and lascivious act counts which were to run concurrent with each other and to the life imprisonment term imposed on the sexual battery count (Id. at record pp. 64-73). The appellate court affirmed Petitioner's convictions and sentences (Resp. Ex. 5); *see Parker v. State*, 808 So. 2d 221 (Fla. 2d DCA 2001) [table].

Petitioner, through counsel, filed a motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 ("3.850 motion"), raising four grounds (Resp. Ex. 7). Following an evidentiary hearing (Resp. Ex. 8), the state post conviction court denied the 3.850 motion (Resp. Ex. 9). The appellate court determined that trial counsel's performance was deficient in that she was wholly unprepared for the hearing on the State's motion in limine requesting the exclusion of any testimony or evidence regarding any previous allegations of abuse made by any of the alleged victims (Resp. Ex. 15). The appellate court therefore remanded the case to the post conviction court for an additional evidentiary hearing on the issue of whether Petitioner was prejudiced by counsel's deficient performance (Id.).

---

[1] Unless otherwise specified, references to the Appendices filed with the response (Dkt. 11) shall be referred to as "Resp. Ex.___ , Vol.___ at p.___"

[2] The State nolle prossed two counts of sexual battery, and one count of lewd and lascivious act on a child was dismissed (Id. at record p. 61; Resp. Ex. 41, Vol. II at transcript p. 4).

Following the second evidentiary hearing (Resp. Ex. 17),[3] the state post conviction court found that Petitioner failed to establish prejudice by counsel's deficient performance, and denied the remaining ineffective assistance of counsel claim (Resp. Ex. 20). The appellate court, however, determined that the post conviction court erred during the second evidentiary hearing in preventing Petitioner from presenting witness testimony regarding the child victims' prior accusations and recantations, reversed the post conviction court's order denying the 3.850 motion, and remanded the case for another evidentiary hearing (Resp. Ex. 27).

After the third evidentiary hearing (Resp. Ex. 29), the state post conviction court denied Petitioner's 3.850 motion (Resp. Ex. 32). In denying the motion, the state post conviction court concluded that Petitioner "could not have properly impeached the victims with any prior false accusations. . .and even if [Petitioner] could have introduced the prior accusations, the outcome would not have been different." (Id. at order p. 19). The appellate court *per curiam* affirmed the order denying the 3.850 motion (Resp. Ex. 39)

Thereafter, Petitioner filed the instant petition seeking federal habeas corpus relief (Dkt. 1).

**II. Governing Legal Principles**

A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[3]Counsel for Respondent indicates that she has been unable to locate the transcript of the second evidentiary hearing (Id.).

3

>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous." Rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.

Finally, the Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (dictum). When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

B. Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) whether the deficient performance prejudiced the defense. 466 U.S. 668, 687-88 (1984). Therefore, a habeas court's review of a claim under the *Strickland* standard is "doubly deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 113 (2009) (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003))). Because both parts of the *Strickland* test must be satisfied in order to demonstrate a violation of the Sixth Amendment, a district court need not address the performance prong if the petitioner cannot meet the prejudice prong, or vice versa. *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

The focus of inquiry under the performance prong is "reasonableness under prevailing

professional norms" *Strickland*, 466 U.S. at 688-89. A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The petitioner bears the burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a highly deferential level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden of demonstrating prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

**III. Analysis**

A. Ground One

Petitioner asserts that victim Marlayna Bassett made prior false allegations of sexual abuse against both her father and grandfather, and that she made a false statement that Petitioner tried to

6

get her to run around the house naked. He also asserts that victim Brandy Smith made a false allegation of sexual abuse against her father. Petitioner contends that the state trial court violated "the Confrontation and Due Process Clauses of the U.S. Constitution" by refusing to allow the defense to impeach the victims[4] during cross-examination with those prior false accusations of sexual abuse, and the false statement against Petitioner. Petitioner asserts that his entire defense was that the victims fabricated the allegations of sexual abuse against him because they had learned that their grandmother, Jimmie Parker, who was Petitioner's fiancee, made Petitioner the beneficiary of her estate. He argues that Smith and Bassett's prior false allegations against other individuals, and Bassett's false statement against Petitioner, were relevant to show the victims' motive for making the false allegations against Petitioner, and their lack of credibility.

Prior to trial, the State filed a Motion for Order In Limine in which it asked the trial court to instruct defense counsel not to mention at trial "any previous allegation of abuse made by any of the victims and the subsequent results of any of these allegations." (Resp. Ex. 41, Vol. I at record p. 28). Shortly before the trial commenced, the motion in limine was heard and granted (Resp. Ex. 41, Vol. III at transcript pp. 109-10).

The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The primary purpose of the right of confrontation is to afford the opportunity for effective cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (citing *Davis v. Alaska*, 415 U.S. 308, 315 (1974)). Exposing a witness' possible bias or motivation in testifying is "a proper and important function of [this] constitutionally protected

---

[4]There were three victims, Brooke Farr, Brandy Smith, and Marlayna Bassett, all of whom were cousins (Dkt. 1-1 at p. 8). Petitioner does not assert that Farr made prior false allegations of sexual abuse against him or others.

right." *Delaware v. Van Arsdall*, 475 U.S. at 678-79 (quoting *Davis v. Alaska*, 415 U.S. at 316-17). "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Van Arsdall*, 475 U.S. at 680 (quoting *Davis v. Alaska*, 415 U.S. at 318). However, while the Sixth Amendment provides an opportunity for effective cross-examination, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. at 679.

Upon review of the record, the Court finds that the state trial court's decision to grant the State's motion in limine to exclude evidence regarding any prior allegations of sexual abuse made by the victims was not a violation of Petitioner's due process rights and rights under the Confrontation Clause. Rather, the state trial court acted within its discretion to exclude such evidence where, during the hearing on the motion in limine and trial, defense counsel neither proffered the substance of the victims' prior accusations of sexual abuse, nor presented evidence that the prior accusations were false (Resp. Ex. II-IV).[5] Although after trial concluded, counsel set forth evidence of prior allegations in Petitioner's Motion for Judgment of Acquittal or Motion for New Trial (Resp. Ex. 41, Vol. I at record pp. 77-81), it was too late because the trial court was never given

---

[5]When arguing against the State's motion in limine, defense counsel indicated that the victims made "past allegations of sexual abuse against two other men. . . ." (Resp. Ex. 41, Vol. III at transcript pp. 109-10). Counsel did not argue that the prior allegations were false or recanted (Id.).

the opportunity before or during trial to consider the evidence regarding the alleged prior allegations of sexual abuse. *See Baker v. State*, 71 So. 3d 802, 816 (Fla. 2011) (stating that the party seeking to admit evidence must proffer the contents of the excluded evidence to the trial court to preserve a claim of error), *cert. denied*, 132 S. Ct. 1639 (2012); *Brantley v. Snapper Power Equip., Inc.*, 665 So. 2d 241, 242 n.3 (Fla. 3d DCA 1995) (observing that where no adequate record of the excluded evidence is made during the hearing on the motion in limine, an offer of proof must be made at trial); *Diaz v. Rodriguez*, 384 So.2d 906 (Fla. 3d DCA 1980) (offer of proof and showing of admissibility made for first time at motion for new trial "was too late" and did not preserve for appeal issue that proof improperly rejected). Therefore, the trial court acted within its "wide latitude insofar as the Confrontation Clause is concerned" in excluding evidence regarding the victims' prior allegations of sexual abuse because Petitioner failed to show that the prior allegations were relevant. *See United States v. Lyons*, 403 F.3d 1248, 1255-56 (11th Cir. 2005) ("The Sixth Amendment only protects cross-examination that is relevant.") (quoting *Jones v. Goodwin*, 982 F.2d 464, 469 (11th Cir.1993)); *United States v. Tail*, 459 F.3d 854, 860-61 (8th Cir. 2006) (finding no violation of the Confrontation Clause because defendant failed to support his claim that the victim's previous accusations of abuse were false and therefore the evidence "had only limited probative value"); *Quinn v. Haynes*, 234 F.3d 837, 846 (4th Cir. 2000) ("A true allegation of another sexual assault is completely irrelevant to credibility. . . .").

The state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Ground One does not warrant relief.

B. Ground Two

Petitioner contends that counsel was ineffective in failing to adequately oppose the State's

Motion for Order In Limine requesting the Court instruct defense counsel not to mention "any previous allegation of abuse made by any of the victims and the subsequent results of any of these allegations." In state court, Petitioner raised this claim in ground one of his 3.850 motion (Resp. Ex. 7 at "Error 1"). There, Petitioner argued that counsel was ineffective in failing to: 1) file a written response to the motion in limine; 2) present any meaningful argument or citation of law in support of her opposition to the motion in limine during the hearing on the motion; and 3) proffer any evidence "she intended to introduce at trial or argue that this evidence was critical to Parker's defense." (Id.). After twice denying the claim, and after twice being reversed on appeal, the state post conviction court denied the claim a third time (Resp. Ex. 32). In denying the claim, the post conviction court concluded that Petitioner was not prejudiced by counsel's deficient performance with respect to her opposition to the State's motion in limine because Petitioner "could not have properly impeached the victims with any prior false accusations under *Jaggers*, and even if Defendant could have introduced the prior accusations, the outcome would not have been different." (Id. at record p. 1149).[6]

First, to the extent Petitioner argues that he was prejudiced by counsel's failure to adequately oppose the State's motion in limine because the victims' prior accusations were admissible under Florida law, the claim fails. The state post conviction court, after hearing the testimony regarding the prior accusations, found that the evidence regarding the victims' prior accusations was not admissible under Florida law (Resp. Ex. 32 at record pp. 1140-44). The appellate court per curiam affirmed without written opinion (Resp. Ex. 39). Therefore, the state courts have answered the question of what would have happened had defense counsel argued that the victims' prior

---

[6] *Jaggers v. State*, 536 So. 2d 321 (Fla. 2d DCA 1988).

accusations were admissible under Florida law - her argument would have been rejected. Consequently, even if counsel was deficient in opposing the State's motion in limine, Petitioner has failed to establish prejudice. *See e.g., Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[i]t is a fundamental principle that state courts are the final arbiters of state law, federal habeas courts should not second-guess them" - - the Alabama Court of Criminal Appeals had already answered the question of what would have happened had counsel objected to the introduction of petitioner's statements based on state decisions; the objection would have been overruled; therefore, counsel was not ineffective for failing to make that objection) (citation and internal quotation marks omitted).[7]

Second, to the extent Petitioner implicitly argues that he was prejudiced by counsel's failure to oppose the State's motion in limine on the ground that Petitioner had a right under the Sixth Amendment's Confrontation Clause to cross-examine the victims concerning their prior accusations, the claim likewise fails because exclusion of the evidence was not a violation of the Confrontation Clause.

Petitioner argues that the victims' prior accusations were relevant to their general credibility. He also argues that the evidence showed a pattern of false accusations, i.e., the accusations were against either male authority figures or the beneficiaries of Jimmie Parker's estate, which was evidence of a motive. "[A] defendant's right of confrontation is violated when he is prohibited from pursuing areas of cross-examination that may undermine the credibility of the witness[.]" *Dorsey*

---

[7]Subsequent to the conclusion of Petitioner's state post conviction proceedings, the Florida Supreme Court disapproved *Jaggers v. State*, *supra*, the case on which Petitioner relied to argue that the prior accusations were admissible, and held that under Florida law, a victim may not be cross-examined about an alleged prior false accusation that did not result in a criminal conviction. *Pantoja v. State*, 59 So. 3d 1092 (Fla.), *cert. denied*, 132 S. Ct. 496 (2011).

*v. Chapman*, 262 F.3d 1181, 1190 (11th Cir. 2001) (citing *Olden v. Kentucky*, 488 U.S. 227, 233 (1988)). Also, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. at 678-679 (citation omitted). "To establish a Confrontation Clause violation, the defendant must show that he was 'prohibited from engaging in otherwise appropriate cross-examination' and 'a reasonable jury might have received a significantly different impression of the witness's credibility had the defendant's counsel been permitted to pursue his proposed line of cross-examination.'" *Hamner v. Davison*, 438 Fed. Appx. 875, 882 (11th Cir. 2011) (unpublished) (quoting *Delaware v. Van Arsdall*, 475 U.S. at 680).

Petitioner does not allege that Farr made prior accusations of sexual abuse. Further, it appears from the record that Brandy Smith's prior accusation against her father, Lester Smith, was apparently true. During the third evidentiary hearing, Jimmie Parker testified that Lester Smith's ex-wife told her that "Brandy had told her her daddy messed with her." (Resp. Ex. 29 at record p. 1237). Jimmie Parker also testified that Brandy Smith told her that "my daddy messed with me." (Id. at record p. 1238). Jimmie Parker further testified that when she confronted Lester Smith about Brandy Smith's allegation, he told her that "he did it thinking it was [his ex-wife] in the bed with him." (Id. at record p. 1239). Jimmie Parker agreed with counsel for the State that Brandy Smith's allegation against Lester Smith "was not necessarily false" (Id. at record p. 1241).

Moreover, Bassett's prior accusation that Petitioner told her to "run around naked" (see id. at record p. 1193) also appears to be true. Both Jimmie Parker and Helen Nicole Smith ("Helen Smith"), Bassett's step-mother, testified during the third evidentiary hearing that Petitioner admitted to them that after he told Bassett to go take a shower or bath, and Bassett responded that she did not

have any clothes, he said something to Bassett along the lines of "if you couldn't find clothes to run around naked" (Id. at record pp. 1193-94) or "well, run around naked if you have to" (Id. at record p. 1206). Both Helen Smith and Jimmie Parker admitted that what Bassett said was true (Id. at record pp. 1199, 1206-07).

Given that both Brandy Smith's prior accusation against Lester Smith and Bassett's prior accusation that Petitioner told her to "run around naked" were true, admission of these prior accusations would not have given a reasonable jury a significantly different impression of any of the victims' credibility, or demonstrated a pattern of false prior accusations suggesting a motive. *See Quinn v. Haynes*, 234 F.3d at 846 ("A true allegation of another sexual assault is completely irrelevant to credibility. . . ."); *Abram v. Gerry*, 672 F.3d 45, 50 (1st Cir. 2012) ("prior accusations [of sexual assault] will only be relevant to the victim's credibility if the jury concludes they are false"); *White v. Coplan*, 399 F.3d 18, 24 (1st Cir. 2005) ("If the prior accusations were *false*, it suggests a pattern and a pattern suggests an underlying motive (although without pinpointing its precise character).") (emphasis added).

Exclusion of Bassett's alleged prior false allegations of sexual abuse, however, presents a closer question. Helen Smith testified during the third evidentiary hearing that when Bassett was seven-years old, she made an allegation of molestation against Helen Smith's step-father, Don Sports (Resp. Ex. 29 at record p. 1187). Bassett told Helen Smith that Sports "had touched her" (Id. at record p. 1189). Bassett did not tell Helen Smith which part of her body Sports had touched (Id.). When asked if Bassett "indicated some inappropriateness to the touching," Helen Smith answered in the affirmative (Id.). Helen Smith immediately drove Bassett to Jimmie Parker and Sports' home

and confronted them with Bassett's accusation (Id. at record pp. 1190-92).[8] According to Helen Smith, Bassett recanted her accusation against Sports, and said that she made the accusation because she was angry with Sports (Id. at record p. 1191). On cross-examination, Helen Smith indicated that during her deposition, when she was asked about any prior accusations Bassett had made, she may not have mentioned Bassett's accusation against Sports (Id. at record pp. 1195-97). She also admitted that when she testified at the first post conviction evidentiary hearing, she never mentioned Bassett's prior accusation against Sports (Id. at record pp. 1199-1200). During the first evidentiary hearing, Helen Smith[9] testified that she had informed defense counsel that Bassett had made prior allegations of abuse against three or four other individuals, and that all of the allegations were proven to be false (Resp. Ex. 8 at record pp. 275-76). On cross-examination, she testified that the reason she stated that the prior allegations were proven false was that she read records from the Department of Children and Families which indicated that "nothing was done" or "nothing was found" with respect to the allegations (Id. at pp. 277-78).

During the third evidentiary hearing, Don Sports testified that while he was married to Jimmie Parker, she told him that Helen Smith told her that Bassett had accused Sports of "mess[ing] with her." (Resp. Ex. 29 at record p. 1209). He testified that he never heard Bassett make the accusation against him (Id.). As a result of Bassett's allegation, Jimmie Parker and Sports separated for approximately three weeks (Id.). Subsequently, after Sports reunited with Jimmie Parker, Bassett came over to their home and told Sports that she was sorry that she said that he had "messed with [her]" and that she had been mad at him (Id. at record pp. 1209-11). Contrary to Helen Smith's

---

[8]Jimmie Parker and Sports were married at that time (Id. at record p. 1190).

[9]Her name was Helen Penniker at the time of the first evidentiary hearing.

testimony, Sports stated that he did not have a meeting with Helen Smith, Jimmie Parker, and Bassett regarding Bassett's allegation against Sports (Id. at record pp. 1211-15).

Jimmie Parker also testified during the third evidentiary hearing. She testified that in 1997, Helen Smith and Bassett came over to her and Sports' home, and Helen Smith said that Bassett "had said that [Sports] had messed with her." (Id. at record pp. 1219-20). Jimmie Parker was "floored" by the news (Id. at record p. 1220). She testified that "when she accused him again of doing it, I told [Sports] to get his stuff and get out." (Id.).[10] Sports did leave their home (Id.). Jimmie Parker believed that Sports was gone from the home "a couple of months maybe." (Id.). Sports returned to their home after he, Jimmie Parker, Helen Smith, and Bassett sat down at a table at the home, and Bassett "said that she had lied." (Id. at record p. 1220-22). On cross-examination, Jimmie Parker testified that she told defense counsel that she believed that Sports could have actually touched Bassett (Id. at record pp. 1229-30, 1234).

In *Sec'y, Fla. Dep't of Corr. v. Baker*, 406 Fed. Appx. 416 (11th Cir. 2010) (unpublished), the Eleventh Circuit Court of Appeals affirmed the district court's grant of a writ of habeas corpus to Baker. The district court had found that the defendant's Sixth Amendment rights were violated when the state trial court excluded impeachment evidence showing that the victim of defendant's alleged sexual assault had previously falsely accused others of sexually abusing her. During Baker's trial, defense counsel proffered the cross-examination of the victim. *Id*. at 418. The victim admitted that she had falsely accused her brother of having sex with her, she accused her brother-in-law of

---

[10]This testimony appears to contradict Helen Smith's testimony that Bassett recanted her allegation against Sports when Helen Smith initially confronted Sports and Jimmie Parker. Moreover, the fact that Jimmie Parker made Sports leave their home after Helen Smith initially confronted them casts doubt on Helen Smith's testimony that Bassett recanted the allegation against Sports at the time she initially confronted him.

15

trying to have sex with her, but later told authorities that he had not done so, and she "might have" accused her uncle of trying to have sex with her, but that he had not done so. *Id*. Moreover, she testified that her uncle's grandsons tried to have sex with her,[11] and that when she lived with her grandmother she was raped by her grandmother's boyfriend. *Id*. She testified that her grandmother's boyfriend was not prosecuted because "they couldn't catch up with him." *Id*. The trial court "excluded the evidence on grounds that only general reputation evidence, not specific instances of untruthfulness, could be used for impeachment." *Id*. Defense counsel also proffered testimony from the victim's uncle, brother, and sister regarding the victim's past allegations of sexual abuse, "all of which they denied." *Id*. at 420. The trial court excluded this evidence as well. *Id*.

The Eleventh Circuit determined that: 1) the victim's "truthfulness was key to the prosecution;" 2) "the evidence of [the victim's] prior false accusations not only spoke to her general character for truthfulness, but particularly attacked her truthfulness and motivation for testifying as they related directly to her allegation against Baker;" 3) the evidence that the victim had "habitually lied about sexual assaults by family members had 'strong potential to demonstrate the falsity of [her] testimony' in this case, and 'a reasonable jury might have received a significantly different impression of [her] credibility had defense counsel been permitted to pursue his proposed line of cross-examination;'" and 4) "the trial court only limited the testimony in light of the state's rules of evidence regarding impeachment, rather than out of concerns such as harassment, prejudice, confusion, or a policy of protecting sexual-assault victims." *Id*. at 424. The Eleventh Circuit therefore concluded that "Supreme Court precedent clearly indicates that the exclusion of the false-accusation evidence violated Baker's rights under the Sixth and Fourteenth Amendments." *Id*.

---

[11]The victim's uncle denied that his grandsons tried to have sex with the victim. *Id*. at 424.

at 424-25.

*Baker* is readily distinguishable from the facts in Petitioner's case, and Supreme Court precedent does not clearly indicate that the exclusion of the evidence of Bassett's prior allegations violated Petitioner's constitutional rights. First, in *Baker*, the victim herself testified under oath that she made prior false allegations of sexual assault against two or three family members. In Petitioner's case, the victims never testified that they made prior false allegations of sexual abuse.

Second, in *Baker*, the family members against whom the victim made prior allegations of sexual abuse denied the victim's allegations under oath. In Petitioner's case, there was no allegation that Brooke Farr made a prior allegation of sexual abuse, and Brandy Smith's prior allegation against Lester Smith was true. Further, although Helen Smith and Jimmie Parker testified that Bassett recanted her allegation against Sports, and Sports testified that Bassett had apologized for accusing him of "messing with her," neither Sports nor the other witnesses actually denied that Sports had inappropriately touched Bassett. In fact, Jimmie Parker testified that she told Petitioner's defense counsel that she believed that Bassett's allegation against Sports may have been true. Moreover, although Helen Smith testified that Bassett falsely accused other individuals of abuse, there was no testimony from those individuals, let alone testimony denying those allegations. And, Helen Smith did not testify that she knew as a fact that Bassett's allegations against the other individuals were false. Rather, she assumed the allegations were false because she read records from the Department of Children and Families (presumably the state agency that investigated the allegations) which indicated that "nothing was done" or "nothing [was] found" with regard to those allegations.[12]

---

[12]Further muddying the water is Helen Smith's testimony during the first evidentiary hearing which appears to indicate that Bassett was "one or two years old" when she made all or some of the prior accusations against the other individuals (Resp. Ex. 8 at record p. 277).

Third, there was only one victim in *Baker*, and there was compelling proffered evidence that the victim "had habitually lied about sexual assaults by family members." *Baker*, 406 Fed. Appx. at 424. In contrast, three victims testified that Petitioner sexually assaulted them. Further, there was no evidence that two of the victims made prior false allegations of sexual abuse against other individuals, and the evidence that the third victim made prior false allegations was far from compelling.

The Court finds that the evidence that Bassett made prior false allegations of sexual abuse against other individuals did not have "'strong potential to demonstrate the falsity of [her] testimony'" in Petitioner's case. *Baker*, 406 Fed. Appx. at 424 (quoting *Olden*, 488 U.S. at 232). A reasonable jury would not "have received a significantly different impression of [Bassett's] credibility" had the frail evidence of Bassett's prior allegations been admitted at trial. *Hamner v. Davison*, 438 Fed. Appx. at 882 (quoting *Delaware v. Van Arsdall*, 475 U.S. at 680). Moreover, the evidence would have been, at best, only marginally relevant to show that the victims' motivation to testify against Petitioner was their interest in Jimmie Parker's estate. Further, Petitioner was not prohibited from making any inquiry into the victims' motives. Defense counsel cross-examined the victims regarding their meeting to discuss Petitioner touching them (see Resp. Ex. 41, Vol. III at transcript p. 210), and presented evidence of the victims and their families' motive through the testimony of Detective Yaratch (see Resp. Ex. 41, Vol. IV at transcript pp. 248-50), Petitioner (see id. at transcript pp. 265-66), and Jimmie Parker (see id. at pp. 281-82).

In sum, Petitioner has failed to establish a Confrontation Clause violation. *Id*. *See also, Quinn v. Hayes*, 234 F.3d at 845-46 (finding no Confrontation Clause violation in excluding accusations with insufficient proof of falsity); *United States v. Bartlett*, 856 F.2d 1071, 1088 (8th

Cir.1988) ("Admission of all evidence that is the least bit probative of credibility is not, however, always constitutionally required."); *United States v. Lankford*, 955 F.2d 1545, 1549 n.10 (11th Cir. 1992) ("The Sixth Amendment does not require unlimited inquiry into the potential bias of a witness. As long as sufficient information is elicited from the witness from which the jury can adequately assess possible motive or bias, the Sixth Amendment is satisfied.") (internal citations and quotations marks omitted). Consequently, Petitioner has failed to demonstrate that he was prejudiced by his counsel's alleged deficient performance with respect to her opposition to the State's motion in limine.

The state courts' decision that Petitioner did not satisfy *Strickland*'s prejudice prong was not contrary to Supreme Court precedent, did not unreasonably apply Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the state-court evidence. Accordingly, Ground Two does not warrant relief.

**IV. Certificate of Appealability**

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. See 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).

A COA is GRANTED on the issue of whether trial counsel's deficient opposition to the State's motion in limine requesting the exclusion of any evidence regarding previous allegations of

abuse made by the victims prejudiced Petitioner. Reasonable jurists could debate the conclusion reached by this Court that Petitioner did not establish prejudice resulting from counsel's deficient opposition to the motion in limine.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**. The Clerk of Court shall enter judgment accordingly.

2. Petitioner is **GRANTED** a certificate of appealability on Ground Two of the petition.

3. The Clerk of Court is directed to terminate all pending motions and close this case.

**DONE and ORDERED** at Tampa, Florida, this /3rd day of August, 2013.

JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copy to: Counsel of Record
        Petitioner *pro se*